FILED'10 OCT 29 9:07USDC-ORM

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## MEDFORD DIVISION

DAWN WOOD,                                          Civil No. 09-3094-CL

      Plaintiff,                                      ORDER

    v.

KLAMATH PUBLISHING, INC.,

      Defendant.


CLARKE, Magistrate Judge:

    In her amended complaint, plaintiff Dawn Wood alleges claims of sex

discrimination and retaliation in violation of Title VII and state law against her former

employer, defendant Klamath Publishing. Plaintiff seeks economic and non-economic

damages, punitive damages, and costs and expenses, including reasonable attorney fees.

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. The parties have

executed written consents to entry of judgment by a magistrate judge (#14). 28 U.S.C. §

636(c). Before the court is defendant's motion for summary judgment (#27) and motion

to strike plaintiff's response (#40). For the reasons explained below, defendant's motion

Order - 1

to strike is denied, and its motion for summary judgment is granted.

## DISCUSSION

### I. Defendant's Motion to Strike Plaintiff's Response

Defendant contends that plaintiff's response and supporting documents should be stricken because they were untimely filed. Defendant did not offer any reply at the telephone hearing to plaintiff's response to the motion. The court finds in the circumstances that plaintiff shows excusable neglect for the untimely filing. Moreover, the summary judgment is fully briefed and the court prefers to address plaintiff's case on the merits. Defendant's motion is denied.

### II. Defendant's Motion for Summary Judgment

#### A.    Factual Background

Construing the facts in the light most favorable to the non-movant, a review of the record reveals the following[1]:

Defendant publishes the *Herald and News*, a Klamath Falls newspaper. (Wright Decl. ¶ 2.) Plaintiff began working for defendant in April of 2004 as a mail room worker. (Wood Dep. 5:8-11.)

In early 2007, plaintiff's supervisor, Jeff Stewart, became seriously ill and left the Company. (Wood Dep. 52 8-12.) Plaintiff attempted to apply for Mr. Stewart's position by asking to do the scheduling. She understood the position was never advertised or posted. (Wood Dep. 52:17-18, 53:7-10, 54:11-15.) Plaintiff took over some of Stewart's

---

[1] After defendant filed its Reply brief, plaintiff filed a corrected concise statement of facts. Defendant did not object to the filing at the telephone hearing on the motions.

duties for a short time before the duties were passed on to one of plaintiff's female co-workers, CJ Jurgens.  (Wood Dep. 53:1-4.)  In May of 2007, defendant hired Dave Tingley to fill Mr. Stewart's position.  (Wright Decl. ¶ 4.)  Mr. Tingley left the company in October 2007 and Ms. Jurgens replaced him.  (Wood Dep. 54:7-10, 14-15.)  Plaintiff does not know why Ms. Jurgens was selected for the permanent position or why she was never offered the position.  (Wood Dep. 54:16-20.)

Plaintiff applied for a position in the advertising department in 2006, August 2007 and October 2007.  (Wood Dep. 63:18-25.)  Defendant did not hire her for any of those positions.  (Wood Dep. 61 6-13.)  Plaintiff does not know who was hired for any of the three positions and does not know why she was not selected.  (Wood Dep. 64:10-15; 66:13-15.)  Each of the open advertising positions were filled by women. (Wright Decl. ¶ 5.)

Defendant employs pressmen apprentices to operate its newspaper presses, described by plaintiff as a "physical/manual labor job," although in the new building at least some of the job has been mechanized.  (Wood Dep. 77:14-78:6.)  Two pressmen apprentices were hired during plaintiff's tenure with defendant: Ed Angelo in June of 2005 and Ramon Pena in either November 2006 or August 2007.  (Wright Decl. ¶ 3; Wood Decl ¶¶3-4 & Ex. B  Wood Dep. 77:3-7, 86:5.)  Plaintiff does not know what Mr. Angelo and Mr. Pena's qualifications for the apprenticeship program were as compared to hers.  (Wood Dep. 82:11-13; 85:13-15.)  Plaintiff believes, based on second-hand knowledge, that Mr. Angelo was selected for the first apprenticeship because his father was a press operator.  (Wood Dep. 81:25-82:10.)  Plaintiff believes Mr. Pena was selected

for the second apprenticeship because he was friends with Dave DeLonge, the person in charge of hiring pressman apprentices at the time. (Wood Dep. 85:23-86:2.)

Plaintiff had no mechanical or repair work experience at the *Herald and News*. (Wood Dep. 83:4-6.) She asked someone else to repair her machinery when it broke down rather than fix it herself like other mail room workers, who did it voluntarily. (Wood Dep. 83:7-9; 83:22-84:15.)

In 2004 or 2005, while plaintiff was stacking papers on a machine, Howard Edgar, a co-worker, came up beside her, stepped in front of her, told her that she was doing her job wrong, and proceeded to demonstrate what he thought was the proper way to do it. (Wood Dep. 31:14-16; 32:1-20.) As he was doing so, his body touched hers making her move out of the way; plaintiff's description was that Mr. Edgar "pushed" her out of the way. (Wood Dep. 32:21-33:2.) Plaintiff did not fall and was not physically injured in any way. 33:3-6. Mr. Edgar was talking to himself during that time, but he did not talk with plaintiff and she did not talk with him. (Wood Dep. 33:20-24.) Plaintiff briefly left the room and when she returned Mr. Edgar "was still acting really weird then and violent" – he was yelling and throwing papers around, but aside from telling plaintiff that she could not stack the bundled papers until someone came to help her, did not say anything to her. (Wood Dep. 35:10-21.)

On one other occasion, Mr. Edgar was handing her a bundle of papers, while they were facing each other, and he pushed them into her. (Wood Dep. 40:2-22.) Plaintiff did not fall and was not injured. (Wood Dep. 40:23-41:3.) In 2006, Mr. Edgar and another co-worker, Susie Peterson, were working on either side of the same conveyor belt. 42:12-

25; 50:23-51:5. Ms. Peterson complained to plaintiff, who was present and supervising, that Mr. Edgar was doing the job improperly. (Wood Dep. 42:22-43:11, 43:17-24.) Plaintiff separated Ms. Peterson and Mr. Edgar to solve the problem. (Wood Dep. 43:25-44:7.)

Defendant terminated Mr. Edgar on July 2, 2007. (Wright Decl. ¶ 6.) After his termination, Mr. Edgar took anger management classes and agreed to comply with strict employment guidelines, so defendant re-hired him effective October 4, 2007. (Wright Decl. ¶ 6.)

After learning of Mr. Edgar's return, plaintiff called Heidi Wright, defendant's publisher, and said that she opposed Mr. Edgar's re-hiring. (Wood Dep. 51:12-17.) When asked why she opposed Mr. Edgar's re-hiring, plaintiff told Ms. Wright that she was afraid Mr. Edgar would hurt her because she had a dream where Mr. Edgar came to work and shot people starting with her. (Wood Dep. 69:15-23.)

Plaintiff's only other complaints about Mr. Edgar were that he played his radio too loud; that he was belligerent one day; that he was frequently absent or late; that he would dominate conversations at work with non-work related topics. (Wood Dep. 44:13-45:23, 47:3-7, 54:21-25.) The loud radio and dominating conversations incidents occurred prior to Mr. Edgar's termination. (Wood Dep. 49:1-9.) Plaintiff does not think Mr. Edgar singled her out for poor treatment, but rather thinks that he acted the same towards all of his co-workers. (Wood Dep. 47:24-48:1.)

On March 3, 2008, plaintiff filed an EEOC complaint against defendant. (Bernick Decl., Ex. 2.) Plaintiff's complaint was dismissed on July 29, 2009. (Compl. ¶ 4.)

During plaintiff's shift on April 29, 2008, several people observed and it was reported to defendant that plaintiff smelled of marijuana and was leaning against the machinery. (Wright Decl. ¶ 7; Bernick Decl. Ex. 3.) Based on this, defendant required plaintiff to submit to a drug test the next day. (Wood Dep. 107:13-14.) Plaintiff's drug test came back showing levels of marijuana in her system in excess of the minimum for a positive test. (Wright Decl. ¶ 7; Wood Dep. 107:11-16.) Plaintiff does not dispute the accuracy of the test results (Wood Dep. 107:15-16.) Plaintiff is the only employee that defendant has drug tested. (Wright Decl. ¶ 9.)

After the test results were received, defendant's president, Heidi Wright, terminated plaintiff's employment on May 13, 2008. (Wood Dep. 107:17-21; Wright Decl. ¶ 6.)

Plaintiff believes she was terminated for filing the EEOC complaint for the reason that she believed if defendant terminated her, the EEOC complaint would automatically be dismissed. (Wood Dep 112:13-22.)

### B.    Legal Standards

Pursuant to Rule 56(c), summary judgment "should be rendered, if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "'if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party must carry the initial burden of proof.  Celotex Corp. v. Catrett,

477 U.S. 317, 322-24 (1986).  The moving party meets this burden by identifying for the

court portions of the record on file which demonstrate the absence of any genuine issue of

material fact.  Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  In

assessing whether a party has met its burden, the court views the evidence in the light

most favorable to the non-moving party.  Allen v. City of Los Angeles, 66 F.3d 1052,

1056 (9th Cir. 1995).  All reasonable inferences are drawn in favor of the non-movant.

Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden

then shifts to the opposing party to present specific facts which show there is a genuine

issue for trial.  Fed. R. Civ. P. 56(e)(2); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819

(9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986).

Summary judgment should be granted for the movant, if appropriate, in the absence of

any significant probative evidence tending to support the opposing party's theory of the

case.  Fed. R. Civ. P. 56(e); THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d

991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290

(1968).  Conclusory allegations, unsupported by factual material, are insufficient to defeat

a motion for summary judgment.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56,

designate specific facts which show there is a genuine issue for trial.  <u>Devereaux</u>, 263

F.3d at 1076.

### C.    Analysis

<u>Timeliness of plaintiff's claims</u>

Defendant contends that any claims based on conduct occurring 180 days prior to

March 6, 2008, the date plaintiff filed her EEOC complaint, or September 8, 2007, are

untimely and cannot serve as the basis for plaintiff's sex discrimination claims.  Plaintiff

responds that, because Oregon is a deferral state with a work sharing agreement with the

EEOC, she has a 300-day time limit to file her EEOC complaint.  Plaintiff further argues

that the 300 days should run from the date she submitted her detailed EEOC

questionnaire–December 17, 2007, and, thus, the cutoff date is April 20, 2007.

Defendant replies that plaintiff may not use the 300-day extended time period unless she

"initially instituted proceedings" with BOLI, the local agency, which she did not do.

Defendant also contends that plaintiff's EEOC intake questionnaire is insufficient and

should not be deemed an EEOC charge.

Pursuant to 42 U.S.C. § 2000e-5, a complainant must generally file a Title VII

discrimination charge with the EEOC within 180 days of the occurrence of the alleged

unlawful employment practice, unless the complainant "initially institutes proceedings"

with a state or local agency with the authority to grant or seek relief from the unlawful

practice charged, in which case the time period for filing is extended to 300 days.  42

U.S.C. § 2000e-5(e)(1).  However, the Ninth Circuit has "rejected the argument that state

proceedings must be commenced within 180 days to trigger the 300-day extended filing

period." <u>Bouman v. Block</u>, 940 F.2d 1211, 1220 (9th Cir. 1991) (citing <u>Wiltshire v.</u>

<u>Standard Oil Co. of Cal.</u>, 652 F.2d 837, 839 (9th Cir. 1981)). "'[T]he deferral state

exception requires only that state proceedings be instituted before the expiration of the

300-day extended filing period.'" <u>Id.</u>  The District of Oregon has found that, "A

discrimination charge under Title VII shall be filed within 300 days of the alleged

unlawful employment practice in jurisdictions, such as Oregon, that have joint

worksharing agreements between the EEC [sic] and an equivalent state agency." <u>Gamez-</u>

<u>Morales v. Pac. Nw. Renal Servs., LLC</u>, No. CV 05-546-AS, 2006 WL 2850476, at *15

(D. Or. Sept. 29, 2006), <u>af'd</u>, 304 Fed. Appx. 572 (9th Cir. 2008); <u>see</u> 29 C.F.R. §§

1601.13(a)(3)(4), 1601.74, 1601.80.  Because Oregon is a deferral state, plaintiff did not

have to file her charge first with BOLI within 180 days to trigger the 300-day extension.

Accordingly, the court will consider unlawful employment practices alleged by Plaintiff

within 300 days of the filing of her complaint with the EEOC.


      Defendant also contends that the Intake Questionnaire filed by plaintiff with the

EEOC on December 17, 2007, does not qualify as a "charge" to the EEOC.

      The Supreme Court in <u>Federal Express Corp. v. Holowecki</u>, 552 U.S. 389, 402

(2008), considered this question in the context of the Age Discrimination in Employment

Act (ADEA).[2]  Considering the agency's interpretation of the regulations, the Court found

---

[2]  While courts must be cautious to not apply rules applicable under one statute to another
because of differences between the ADEA and Title VII statutory schemes, the majority of
courts considering this question in Title VII cases have determined that the <u>Holowecki</u>
analysis applies in the context of Title VII cases as well because of the similarities concerning
exhaustion of administrative remedies.  <u>See, e.g.</u>, <u>Grice v. Baltimore County</u>, Civil No. JFM 07-

that,

> In addition to the information required by the regulations, *i.e.*, an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.

Id. at 402. "[T]he filing must be examined from the standpoint of an objective observer to determine whether, by reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." Id. Filings with the EEOC should be construed, consistent with rules of interpretation, "to protect the employee's rights and statutory remedies." Id. at 406.

The regulations applicable to Title VII cases provide that a charge should contain certain information, 29 C.F.R. § 1601.12(a), but "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of, " 29 C.F.R. § 1601.12(b). Significantly, the Holowecki Court did not require that an applicant make an explicit request for action by the EEOC. Here, plaintiff completed the form, adding an attachment to respond fully to the questions posed on the form. Above her signature, plaintiff adds in her own words that she has hired an attorney "who is assisting me with *this complaint form*." (Emphasis added.) Important here, the Holowecki court considered a questionnaire form from 1987, whereas plaintiff used a questionnaire from 2006. The language used in the form has changed in material ways.

---

1701, 2008 WL 4849322, at *4 n.3 (D. Md. Nov. 5, 2008), aff'd, 354 Fed. Appx. 742 (4th Cir. 2009); Palmer v. Sw. Airlines Co. No. 08 C 6158, 2009 WL 3462043, at *5 n.3 (N.D. Ill. Oct. 23, 2009).

See Holowecki, 552 U.S. at 406-07.  The initial paragraph provides that, "Upon receipt, this form will be reviewed to determine EEOC coverage."  (Wood Decl. Ex. A-1.)  While the purpose of the questionnaire form "is to solicit information . . . to enable the Commission to act on matters within its jurisdiction," it goes on to provide:  "When this form constitutes the only timely written statement of allegations of employment discrimination, Commission will consistent with [the regulations], consider it to be a sufficient charge of discrimination under the relevant [sic]."  (Wood Decl. Ex. A-4.) Under "Routine Uses" paragraph is stated that the information will be used to determine whether the Commission has jurisdiction over "allegations of employment discrimination: and "to provide such charge filing counseling as is appropriate."  (Wood Decl. Ex. A-4.)

The court deems the intake questionnaire filed by plaintiff with the EEOC on December 17, 2007, a charge to the EEOC for remedial action.  See Palmer v. Sw. Airlines Co., No. 08 C 6158, 2009 WL 3462043, at *6-*8 (N.D. Ill. Oct. 23, 2009) (and cases cited). The court has found that plaintiff is entitled to the extended 300-day period to file her charge.  Accordingly, the court will consider any unlawful employment practice alleged by plaintiff within 300 days of December 17, 2007, which have been exhausted, see infra, calculated by plaintiff as April 20, 2007.[3]

_____

[3] In calculating the 300-day look back period, plaintiff allows for the 60 day deferral period, calculating from February 15, 2008.  However, it appears that, in states with worksharing agreements such as Oregon, Gamez-Morales, 2006 WL 2850476, at *15, supra, the deferral period is waived such that filing with the EEOC is filing with the state.  See Laquaglia v. Rio Hotel & Casino, Inc., 186 F.3d 1172, 1174-75 (9th Cir. 1999); 29 C.F.R. § 1601.13(a)(4). Considering the full 300-days here, from February 20, 2007, however, would not change the result based on the alleged incidents at issue.

Order - 11

Exhaustion of plaintiff's claims

Defendant contends that, even if the alleged conduct is timely, two of plaintiff's failure to promote claims related to the advertising positions and the night mail room supervisor position are barred because plaintiff did not include them in her EEOC complaint. The court's subject matter jurisdiction covers all claims of discrimination included in a timely filed charge with, and investigation by, the EEOC and any investigation that could reasonably be expected to result from the charge. Vasquez v. County of Los Angeles, 349 F.3d 634, 644 (9th Cir. 2003). It is true that plaintiff did not include any failure to promote claim regarding any advertising position in her formal EEOC complaint, but she did include a claim of discrimination related to the position of advertising assistant in her intake questionnaire which the court has deemed a charge. Defendant's motion on this ground is denied. Plaintiff did not include a claim of failure to promote relating to the night mail room supervisor in either her EEOC complaint[4] or her questionnaire and that claim is not exhausted. Defendant's motion on this ground is granted.


Sex discrimination claims

Title VII of the Civil Rights Act makes it illegal for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of

---

[4] Even if plaintiff's statement in her formal complaint that she was demoted in 2007 from lead mail room assistant to mail room assistant is construed as a claim for failure to promote to night mail room supervisor and is thereby exhausted, plaintiff offers no argument in response to defendant's contentions related to any failure to promote her to night mail room supervisor.

employment because of the individual's sex.  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may

show a violation of Title VII by proving disparate treatment or disparate impact, or by

proving the existence of a hostile work environment.  <u>Sischo-Nownejad v. Merced Cmty.</u>

<u>Coll. Dist.</u>, 934 F.2d 1104. 1109 (9th Cir. 1991), <u>abrogated on another ground</u> <u>as stated in</u>

<u>Dominguez-Curry v. Nev. Transp. Dept.</u>, 424 F.3d 1027 (9th Cir. 2005).


     <u>Sex discrimination claims -  Failure to promote claims</u>

     Within the 300-day look back period, plaintiff alleges she was discriminated on

the basis of her sex when she was not promoted to an advertising position and when she

was not considered for a pressman apprentice position.

     Disparate treatment occurs when a plaintiff is singled out and treated less

favorably than others similarly situated based on race or national origin, or gender.  <u>See</u>

<u>Gay v. Waiters' & Dairy Lunchmen's Union</u>, 694 F.2d 531, 537 (9th Cir. 1982).  The

specifics of a prima facie case of disparate treatment will vary and are dependent upon the

type and circumstances of the employment action under attack.  <u>McDonnell Douglas</u>

<u>Corp. v. Green</u>, 411 U.S. 792, 802 n.13 (1973).   In general, the factors of a prima facie

case include:  "(1) membership in a protected class; (2) qualification for the job or

satisfactory performance of the job; (3) an adverse employment decision; and (4) different

treatment than those similarly situated outside of the protected class."  <u>Hotchkins v. Fleet</u>

<u>Delivery Serv.</u>, 25 F. Supp 2d 1141, 1146 (D. Or. 1998) (citing <u>McDonnell Douglas</u>, 411

U.S. at 802).  To establish a prima facie case in the context of a failure to promote claim,

plaintiff must show that:  1) she is a member of the protected class; 2) she was qualified

for the position sought; 3) she did not receive the promotion; and 4) individuals outside the protected class were promoted.  Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 672 (9th Cir. 1988); see Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 254 n.6 (1981).

Sex discrimination claims - Failure to promote claims - advertising positions

Plaintiff alleges she was discriminated on the basis of her sex when she was not promoted to an advertising position.  Within the 300-day look back period, there is evidence that plaintiff applied for an advertising position in August 2007 and in October 2007.  Defendant contends that plaintiff cannot establish a claim because the evidence shows that a woman was hired in each of the advertising positions plaintiff applied for.  Plaintiff does not respond to defendant's contentions regarding her discrimination claims related to the advertising positions.  Defendant's motion is granted as to plaintiff's claims that she was discriminated on the basis of her sex when she was not promoted to an advertising position.

Sex discrimination claims - Failure to promote claims - pressman apprentice positions

Within the 300-day cut-off period, plaintiff claims that she was discriminated against on the basis of her sex when she was not considered for a pressman apprentice position.  Defendant contends that plaintiff's claim is untimely and that she has no evidence that she was denied a pressman apprenticeship because of her sex.

Title VII of the Civil Rights Act makes it illegal for an employer to discriminate against an individual because of the individual's sex "in admission to, or employment in, any program established to provide apprenticeship or other training." 42 U.S.C. § 2000e-2(d). The Fourth Circuit has determined that, to establish a prima facie case for discrimination in training, a plaintiff must show that: "(1) the plaintiff is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for the training; and (4) the plaintiff was not provided training under circumstances giving rise to an inference of discrimination." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 549-50 (4th Cir. 2002) (citing Pafford v. Herman, 148 F.3d 658, 667 (7th Cir. 1998)).

The date of Ramon Pena's hire date into the pressman apprenticeship is disputed. Defendant offers the declaration of its president, Heidi Wright, who declares that Mr. Pena was hired in November 2006. Plaintiff offers evidence in the form of her deposition testimony, her declaration, and a diary entry from November 2007, that Mr. Pena was hired in August 2007. However, even considering plaintiff's assertion that Mr. Pena was hired as a pressman apprentice in August 2007 during the 300-day look back period, and considering plaintiff's evidence that she was qualified for the job as meeting one of the elements needed to establish her prima facie case of discrimination,[5] plaintiff offers no evidence of circumstances giving rise to an inference that she was discriminated against

_____

[5] Plaintiff testified at her deposition that she had never seen the posted qualifications for the position, but stated that the apprentice positions had all been mail room workers and had driven a forklift. She learned to drive a forklift which she felt was one of the ways she could earn respect. (Wood Dep. 77, 86.)

Order - 15

in this regard on the basis of her sex.

Plaintiff's only evidence in this regard is that two men were hired as apprentices for the two positions apparently available during her tenure with defendant, and her conclusory statement in her declaration in which she states that, "I believe that Klamath Publishing has not hired women into the Pressman Apprentice position and did not offer the position in August 2007 to any women who were qualified and who had each been working for Klamath Publishing for a longer period of time tha[n] Ramon Pena." (Wood Decl. ¶ 4.)  Significantly, plaintiff's evidence is that Mr. Pena was hired as an apprentice, not because he was a male, but because he was friends with Dave DeLonge, the person in charge of hiring apprentices.  Other than the evidence cited above and plaintiff's assertion that "the position was reserved for the male dominated world" (Pl. Opp'n at 6), plaintiff offers no evidence that only males were selected by defendant as pressman apprentices or that an individual's sex was a factor in the hiring of apprentices.  See Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation . . . ."); Nelson v. Pima Cmty. Coll., 83 F.3d 1075, 1081 (9th Cir. 1996).  On this record, plaintiff does not establish a prima facie case of discrimination on the basis of her sex when she was not promoted to a pressman apprentice position, and defendant's motion is granted as to this claim.

//

//

//

Order - 16

Sex discrimination claims - Sexual harassment claims

Plaintiff alleges that she was harassed by a co-worker, Howard Edgar, on the basis

of her sex. Plaintiff does not disagree with defendant's characterization of her claim as a

hostile work environment claim. To establish a prima facie case of hostile work

environment based on her gender under Title VII, plaintiff must establish: (1) she was

"'subjected to verbal or physical conduct'" because of her gender; (2) "'the conduct was

unwelcome'"' and (3) "'the conduct was sufficiently severe or pervasive to alter the

conditions of [plaintiff's] employment and create an abusive work environment.'" Manatt

v. Bank of Am., NA, 339 F.3d 792, 798 (9th Cir. 2003) (quoting Kang v. U. Lim Am.,

Inc.. 296 F.3d 810, 817 (9th Cir. 2002)); Craig v. M & O Agencies, Inc., 496 F.3d 1047,

1054-55 (9th Cir. 2007). The working environment must be perceived both subjectively

and objectively as abusive. Manatt, 339 F.3d at 799 n.6. A hostile work environment

claim consists of "a series of separate acts that collectively constitute one 'unlawful

employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002).

Therefore, because hostile environment claims are different in kind from discrete acts

claims since they involve repeated conduct, hostile work environment claims "will not be

time barred so long as all acts which constitute the claim are part of the same unlawful

employment practice and at least one act falls within the time period." Id. at 115-18, 120,

122; Lyons v. England, 307 F.3d 1092, 1105-06 (9th Cir. 2002).

Considering all of the evidence in the record relating to Mr. Edgar, there is

nothing, other than plaintiff's perceptions, which suggests that his conduct and/or

comments with regard to plaintiff was "because of" her sex. Plaintiff's own testimony is

that Mr. Edgar treated their co-workers in the same manner.  Moreover, the incidents

were isolated and occurred over an approximate three-year period.  The court finds that

the incidents were not sufficiently pervasive so as to alter the conditions of plaintiff's

work environment, nor was any one incident sufficiently severe to meet the element to

make out a prima facie case.  On this record, plaintiff fails to make out a prima facie case

of hostile work environment discrimination.


     Federal and state retaliation claims

     Plaintiff alleges that defendant retaliated against her by terminating her

employment for filing a complaint with the EEOC.

     Title VII makes it illegal for an employer to discriminate against an employee

"because he has made a charge . . . under this subchapter."  42 U.S.C. § 2000e-3(a); see

Burlington N. & Santa Fe Ry. Co. v. White, ___ U.S. ___ 126 S. Ct. 2405, 2411 (2006).

To establish a prima facie case of Title VII retaliation, plaintiff must establish:  (1) she

engaged in a protected activity; (2) defendant subjected her to an adverse employment

action; and (3) "a causal link exists between the protected activity and the adverse

action."  Manatt, 339 F.3d at 800 (quoting Ray v. Henderson, 217 F.3d 1234, 1240 (9th

Cir. 2000)); Gahano v. Sundial Marine & Paper, No. 05-CV-1946-BR, 2007 WL

4462423, at *7, *10 (Dec. 14, 2007), adhered to on reconsideration, 2008 WL 185793 (D.

Or. Jan. 17, 2008).

     Defendant contends plaintiff has no evidence of any causal connection between

the filing of her EEOC complaint and the termination of her employment.  Generally,

causation may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision. Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (closeness in time strengthens inference).

The record shows that plaintiff filed her formal EEOC complaint on March 3, 2008; she was asked to submit to a drug test on April 29th; and her employment was terminated on May 13, 2008. Plaintiff's evidence that defendant retaliated against her for filing an EEOC complaint is her testimony that her termination would nullify her EEOC complaint, that is, she thought that "by terminating me for medical marijuana that my EEOC complaint would be dismissed." (Wood Dep. 112:13-22.)

Giving plaintiff all reasonable inferences that she establishes a prima facie claim of retaliation, defendant offers a legitimate, non-discriminatory reason for terminating her employment, Manatt, 339 F.3d at 801 – plaintiff's positive drug test for marijuana taken one day after people observed her at work during her shift leaning on her machinery and smelling of marijuana. Plaintiff asserts in her opposition brief and at the telephone hearing that another employee illegally used marijuana and defendant placed him on a last chance agreement.[6] However, plaintiff does not cite to any evidence in the record, and the court is unaware of such evidence in support. And there is no evidence that the employee plaintiff refers to used or was under the influence of marijuana while on the job. There is evidence offered by defendant of its president, that "One male employee

---

[6] Plaintiff identifies this employee as Jerry Phillips in her opposition brief and as Jerry Mounds at the telephone hearing.

was told his supervisor suspected him of being under the influence of drugs and was required to be tested [but] [t]he employee quit his employment rather than be tested." Wright Decl. ¶ 9. The evidence is that plaintiff was the only employee who has been drug tested. Plaintiff also argues that other employees had medical marijuana cards. Even if true, this does not show that plaintiff's termination for testing positive for marijuana while on the job was a pretext for retaliating against her for filing her complaint in the circumstances. Defendant offers evidence, which plaintiff does not dispute, that its president, who terminated plaintiff's employment, has never known that Jerry Sparks or Jerry Mounts had medical marijuana cards and she has never seen either of them appear under the influence of any drug. In sum, plaintiff offers no evidence that any other employee was observed to be under the influence of marijuana while on the job, was required to be tested, tested positive, and no adverse consequence resulted. Plaintiff fails, on this record, to sustain her burden of showing "specific and substantial" evidence, Manatt, 339 F.3d at 801, that defendant's explanation for her termination is pretextual.

Plaintiff alleges in her amended complaint a state claim under ORS 659A.203 for retaliation. However, that statute applies to public employers. ORS 659A.230 applies to private employers. That statute provides, in pertinent part, that it is an unlawful employment practice for an employer to retaliate against an employee for the reason that the employee has in good faith brought a civil proceeding against an employer. ORS 659A.230(1).[7] Plaintiff does not specifically address this claim in her response to

---

[7] It appears that ORS 659A.199 may also cover claims of retaliation by private employers. However, the statute was effective January 2010, after the events at issue here.

Order - 20

defendant's motion. Establishing a prima facie case of discrimination for ORS Chapter 659 actions is identical to that under federal law, Henderson v. Jantzen, Inc., 79 Or. App. 654, 657 (1986), and the McDonnel Douglas/Burdine framework applies to this claim, Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090-93 (9th Cir. 2001). For the same reasons that plaintiff's federal retaliation claim fails, supra, so does her state retaliation claim. See Gamez-Morales v. Pac. Nw. Renal Servs., LLC, No. CV 05-546-AS, 2006 WL 2850476, at *16 (D. Or. Sept. 29, 2006), aff'd, 304 Fed. Appx. 572 (9th Cir. 2008) (employer offered valid reasons for termination and there was no evidence that the termination was based in any way on plaintiff's BOLI filing). Defendant's motion as to plaintiff's retaliation claims is granted.

## CONCLUSION

Construing the evidence in the light most favorable to plaintiff and allowing her every reasonable inference, by giving her the full 300-day look back period and considering all of her claims on the merits arising during that time, plaintiff has not shown that a genuine issue of material fact exists for trial. Defendant's motion for summary judgment is granted.

## ORDER

Based on the foregoing, it is ordered that defendant's motion to strike (#40) is denied, and defendant's motion for summary judgment (#27) is granted. Judgment shall be entered in defendant's favor and this case should be dismissed.

//

//

Order - 21

IT IS SO ORDERED.

DATED this ___29___ day of October, 2010.

_____
UNITED STATES MAGISTRATE JUDGE